UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____                    │
│ DATE FILED: SEP 2 6 2014         │
└─────────────────────────────────┘
```

Companion Property and Casualty Insurance
Company,

                              Petitioner,

            –v–

Allied Provident Insurance, Inc.,

                              Respondent.

13-cv-7865

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

Before the Court are five petitions, motions, or cross-motions:  Petitioner Companion Property and Casualty Insurance Company ("Companion")'s petition to confirm an interim arbitration award, Dkt. No. 1; Respondent Allied Provident Insurance, Inc. ("Allied Provident")'s cross-motion to vacate or stay the interim arbitration award, Dkt. No. 9; Allied Provident's motion to disqualify the existing arbitral panel and appoint a new panel or stay the arbitration proceedings, Dkt. No. 16; Companion's cross-petition to compel Allied Provident to select a new party arbitrator, Dkt. No. 30; and Allied Provident's motion to strike portions of the declaration of Robert M. Hall, Dkt. No. 38.  The Court will address the first two motions together, the second two motions together, and the last motion separately.

## I.      BACKGROUND

For brevity, the Court discusses the factual background and procedural history only as it is necessary to decide the motions.  The facts are drawn from the parties' declarations and attached exhibits and are, unless otherwise noted, uncontested.

Companion is an insurance company with its principal place of business in South Carolina.  Dkt. No. 1 ¶ 1.  Allied Provident is an insurance company with its principal place of

1

business in Barbados. Dkt. No. 1 ¶ 2. In April 2011, Companion and Allied entered into a written Private Passenger Automobile Liability Quota Share Reinsurance Agreement (the "Reinsurance Agreement"). Dkt. No. 1 ¶ 3. The Reinsurance Agreement was part of a "fronted" insurance program for non-standard private passenger auto insurance produced by Robert Moreno Insurance Services, a California insurance agency. Dkt. No. 34 at 3. As Companion explained,

> "fronting" is an insurance industry term for a situation in which a U.S. licensed insurance company issues the policies but cedes (lays off) all or most of the insurance risk (as well as most of the premium) to another insurer called a reinsurer. Often, as is the case with Allied Provident, the reinsurer is not licensed in the U.S. This has both business and regulatory implications. If the unlicensed reinsurer does not pay its portion of the losses, the policy-issuing company has to pay 100% of the losses with only a small portion of the premium. It is for this reason that state laws and regulations require policy-issuing companies to obtain collateral from reinsurers for outstanding losses.

Dkt. No. 34 at 3 n.1 (citing Hall Decl. ¶ 5). At some point, Allied Provident allegedly failed to pay the amounts Companion claimed were due under the Reinsurance Agreement, prompting the present dispute between the parties. Dkt. No. 1 ¶ 7.

The Reinsurance Agreement contains an arbitration provision that requires the parties to resolve all disputes arising under the agreement through arbitration. Dkt. No. 1 ¶ 3. On October 2, 2012, Companion demanded arbitration by letter seeking, among other things, collateral to secure Allied Provident's obligations under the Reinsurance Agreement in an amount not less than $5 million. Dkt. No. 1 ¶ 8. As provided for in the Reinsurance Agreement, an arbitral panel was convened with each side appointing its own member of the three-person panel and the two party-appointed members appointing the third. Dkt. No. 1 ¶ 8.

The parties proceeded with arbitration without incident from October 2012 until August 2013. But in August 2013, Companion moved the panel for interim protection in the form of security for amounts allegedly owed and replenishment of amounts in the collateral reinsurance trust as required by the Reinsurance Agreement. Dkt. No 1 at ¶ 10; Dkt. No. 36 ¶ 7 (Christakos Decl.). At roughly the same time, Allied Provident's appointed arbitrator, Frederick G. Carroll,

2

was diagnosed with a brain tumor that required surgery in September 2013. Dkt. No. 10 ¶ 4 (Caroll Decl.). There is dispute regarding the level of Carroll's participation in the arbitration proceedings from that point on, which will be discussed in detail below, but on October 2, 2013 the arbitral panel issued Panel Decision No. 4 granting Companion's motion (the "Interim Award"). Dkt. No. 1 ¶ 11. The Award states: "[Allied Provident] is hereby ordered (1) within 15 days, to post security for unreimbursed losses and expenses by placing funds in escrow under the control of the panel in the amount of $6,606,997, and (2) within 15 business days, to deposit to the reinsurance trust the amount of $2,136,755 or provide [Companion] an irrevocable letter of credit in that amount." Dkt. No. 1 ¶ 11.

Fifteen days following the Interim Order came and went with no compliance from Allied Provident. Dkt. No. 1 ¶ 13. On November 5, 2013, Companion filed a petition in this Court to confirm the Interim Award. Dkt. No. 1 at 4. Companion's petition sparked the resulting flood of motions and cross-motions now before the Court, with Allied Provident seeking to vacate or stay the Interim Award, disqualify the existing arbitral panel and appoint a new panel or stay the arbitration proceedings, and strike the declaration filed in this Court of one of the arbitrators, and Companion seeking to compel Allied Provident to select a new party arbitrator so that the arbitration can resume.

## II.   COMPANION'S MOTION TO CONFIRM THE INTERIM ARBITRATION AWARD AND ALLIED PROVIDENT'S CROSS-MOTION TO VACATE OR STAY THE INTERIM ARBITRATION AWARD

Companion petitioned this Court for a confirmation of the Interim Award pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and Allied Provident, in turn, moved to vacate the Interim Award pursuant to Section 10 of the FAA, 9 U.S.C. § 10. A petition to confirm or vacate an arbitration award under the FAA is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). Section 6 of the FAA provides

that any application under the FAA to the district court "shall be made and heard in the manner provided by law for the making and hearing of motions . . . ." 9 U.S.C. § 6. Therefore, a court may decide the merits of a petition to confirm or vacate an arbitration award "based solely on the papers submitted by the parties in support of their motions." *Productos Mercantiles E Industriales, S.A. v. Faberge USA*, 23 F.3d 41, 46 (2d Cir. 1994) (citing *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 541-43 (5th Cir. 1987)); *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 188 F. Supp. 2d 358, 363 (S.D.N.Y. 2002) ("Under the FAA's motion procedure, the Court may consider an arbitration action by summary proceeding on the basis of the fully briefed motion papers and without the requirement of a hearing." (citing *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 175 (2d Cir. 1998)); *see also* Fed. R. Civ. P. 43(c) ("When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on testimony or on depositions.").

Companion's motion to confirm the Interim Award and Allied Provident's cross-motion to vacate or stay the Interim Award raise two principal issues. First, does the Court have the power to confirm this Interim Award? Second, even if the Court has the power to confirm the Interim Award, should the Award be confirmed or vacated because of the way in which the Award was reached? For the reasons that follow, the Court holds that it may confirm the Interim Award and that it will not vacate the Award or stay its effect.

### A.     This Court Has the Power to Confirm the Interim Award

Generally, "a district court does not have the power to review an interlocutory ruling by an arbitration panel." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) (collecting cases). The policy reason behind this rule is that "[m]ost of the advantages inherent in arbitration are dissipated by interlocutory appeals to a district court." *Id.*

However, courts across the country have concluded that an exception to this rule is sometimes necessary to fulfill the general purposes of arbitration. An exception is required, for example, if a panel has granted "an award of temporary equitable relief such as a security award, separable from the merits of the arbitration . . . ." *British Ins. Co. v. Water St. Ins. Co.*, 93 F.

Supp. 2d 506, 514 (S.D.N.Y. 2000) (collecting cases).  As the Second Circuit stated in *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, "[i]t is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral security award that ensures a meaningful final award."  344 F.3d 255, 262 (2d Cir. 2003) (citing *Yasuda Fire & Marine Ins. Co. of Europe Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 348 (7th Cir. 1994); *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1025 (9th Cir. 1991); *Island Creek Coal Sales Co. v. City of Gainesville, Fla.*, 729 F.2d 1046, 1049 (6th Cir. 1984)).  Indeed, "[d]istrict courts have not hesitated to confirm drastic interim security awards." *Cragwood Managers, LLC v. Reliance Ins. Co.*, 132 F. Supp. 2d 285, 288 (S.D.N.Y. 2001) (collecting cases).  Thus, judicial confirmation of interim security awards is permitted when such confirmation is necessary to ensure the integrity of arbitration.

The arbitral panel in this case issued its Interim Award for prehearing security on October 2, 2013 and set a deadline of fifteen days from the issuance of the Award for Allied Provident to comply.  More than a month after the decision was rendered, Allied Provident had still not complied with the panel's decision.  Allied Provident did not seek reconsideration of the Award, nor did it file a motion to vacate the Award in any court of competent jurisdiction.  Instead, Allied Provident simply ignored the ruling, leaving Companion with no choice but to petition this Court for confirmation of the Award.  Without the ability to confirm such interim awards, parties would be free to disregard them, thus frustrating the effective and efficient resolution of disputes that is the hallmark of arbitration.  Therefore, this Court holds that it has the power to confirm the arbitral panel's Interim Award for prehearing security in order to ensure the integrity of the arbitral process.[1]

---

[1] In passing, Allied Provident made the additional argument that the parties' agreement itself bars judicial confirmation of interim awards based on language in the agreement that "[j]udgment may be entered upon the final decision of the arbitrators in any court having jurisdiction." Dkt. No. 9 at 19; *see also* Dkt. No. 1 at 25.  Allied Provident did not develop this argument further in any of its numerous court filings, and instead focused on whether a court has the power under the FAA to confirm an interim award at all.  Regardless, the Court concludes that the sentence is ambiguous and cannot be read conclusively to bar judicial confirmation of an interim award under the parties' own agreement.

### B.    There Is More than a Barely Colorable Justification for the Award

Having concluded that the Court has the power to confirm the Interim Award, the Court next determines whether the Award should be confirmed. Guiding this review is the general principle that "[t]he scope of the district court's review of an arbitral award is limited." *Banco de Seguros*, 344 F.3d at 260 (citing *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 689 F.2d 301, 304 (2d Cir. 1982)). "[T]he burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" *Kolel Beth Yechiel Mechil of Tarikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103-04 (2d Cir. 2013) (hereinafter "*Kolel Beth*") (citing *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)).

Although the arbitral panel in this case did not provide a justification for its decision, other than to note that "[t]he panel reviewed and exchanged comments on the submissions of the parties in connection with Claimant's Motion for Pre-hearing Security and to Fund the Reinsurance Trust and Respondent's related Cross Motion," Dkt. No. 1 at 49, such written justification is not needed for this Court to confirm the Interim Award. Rather, "[w]here 'an arbitrator has not set forth the specific rationale supporting the decision, the Court may confirm an award if a ground for the arbitrator['s] decision can be inferred from the case." *British Ins. Co.*, 93 F. Supp. 2d at 514-15 (quoting *Lew Lieberbaum & Co. v. Randle*, 85 F. Supp. 2d 123, 126 (E.D.N.Y. 2000)); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (hereinafter "*Willemijn*") (noting "arbitrators are not required to provide an explanation for their decision" (citation omitted)).

Companion's briefing papers presented to the arbitral panel on the issue of prehearing security set forth the following argument:

> [Allied Provident] stopped paying Companion's reinsurance claims in approximately the late summer of 2012, when premium income attributable to the Reinsurance Agreement ran dry, and has failed to keep the reinsurance trust required by Article 19 of the Reinsurance Agreement fully funded as required by the Reinsurance Agreement. No additional trust deposits or other collateral has been provided since May 2012, despite a significant increase in written premiums and loss reserves after that date. The relief requested is necessary to assure that

6

> funds are available and collectible in the event of a final award in favor of
> Companion.

Dkt. No. 23-2 at 2 (Christakos Decl. Ex. 2). Assuming the arbitral panel credited Companion's justification and factual support, a ground for the panel's decision can be inferred from the parties' moving papers. The Court need look no further to conclude that there is a "barely colorable justification" for the arbitral panel's decision to award prehearing security to Companion. Thus, absent a basis to vacate the Interim Award, it should be confirmed.

### C.     There Is No Basis to Vacate the Interim Award

The Court next determines whether, even though there is more than a barely colorable justification for the panel's decision, it should nonetheless vacate the Interim Award because of an infirmity with the process in reaching that decision. "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d 95 at 110 (citing *Willemijn*, 103 F.3d at 12). Section 10 of the FAA provides four bases under which a party may move to vacate an award. 9 U.S.C. § 10(a). Allied Provident moved to vacate the Award on three of these grounds: (1) arbitrator misconduct, § 10(a)(3); (2) arbitrators exceeding their powers, § 10(a)(4); and (3) evident partiality of the arbitrators, § 10(a)(2). In its review of these arguments to vacate the Award, the Court bears in mind that "arbitration awards are subject to very limited review." *Willemijn*, 103 F.3d at 12.

### 1.     Allied Provident Failed to Satisfy Its Heavy Burden of Showing that the Interim Award Proceedings Were Fundamentally Unfair

Allied Provident seeks to vacate the arbitral panel's Interim Award based primarily on the allegation that Companion's party-appointed arbitrator, Robert M. Hall, and the neutral umpire, Thomas M. Tobin, actively prevented the participation of Allied Provident's appointed arbitrator, Frederick G. Carroll, thus rendering the proceedings fundamentally unfair. Dkt. No. 9 at 20. Although there is a factual dispute among the parties regarding the exact degree and nature of Carroll's participation, the Court need not resolve this factual dispute because Allied Provident's own motion papers, declarations, and associated exhibits fail to satisfy its heavy burden of showing that the proceedings were fundamentally unfair. *Cf. Andros Compania*

*Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702 (2d Cir. 1978) (affirming district court's denial of evidentiary hearing and refusal to vacate arbitration award where no "clear evidence of impropriety" was presented in declarations submitted with parties' motion papers). Rather than show that the other two members of the panel actively prevented Carroll from participating, Allied Provident's own motion papers and declarations reveal that the other two panelists were sensitive to Carroll's health concerns, proposed alternative solutions, and even delayed the hearing on the merits twice to accommodate his needs.

"Section 10(a)(3) [of the FAA] provides that a federal court may vacate an arbitration award if 'the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of the party have been prejudiced." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19-20 (2d Cir. 1997) (quoting 9 U.S.C. § 10(a)(3)). "[M]isconduct occurs under this provision only where there is a denial of 'fundamental fairness.'" *Kolel Beth*, 729 F.3d at 104 (citing *Tempo Shain*, 120 F.3d at 20). And, as noted above, the party moving to vacate the award bears the heavy burden of proof of showing that the proceedings were fundamentally unfair and should submit whatever documentary evidence is necessary to decide the issue raised. *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 570-71 (3d Cir. 2007) (explaining FAA motion practice).

On November 9, 2012, Allied Provident provided notice of its selection of Carroll as its party-arbitrator. Dkt. No. 36 ¶ 2 (Christakos Decl.); Dkt. No. 10 ¶ 2 (Carroll Decl.). Companion, in turn, designated Hall. Dkt. No. 10 ¶ 3 (Carroll Decl.). Hall suggested Tobin's name as the "umpire" on the panel (i.e., the third arbitrator chosen by the two party-appointed arbitrators). Dkt. No. 10 ¶ 3 (Carroll Decl.).

On February 25, 2013, an organizational meeting of the parties and arbitral panel occurred by telephone that was transcribed by a certified court reporter. Dkt. No. 36 ¶ 4 (Christakos Decl.). During that call, counsel for each of the parties and each of the arbitrators agreed that the arbitration hearing would take place in New York, New York on October 2-4,

2013. Dkt. No. 36 ¶ 4 (Christakos Decl.); Dkt. No. 36-2 at 24:8-26:15 and 30:6-32:7 (February

25, 2013 Organizational Meeting).  As the arbitration progressed through 2013, Companion

claims that it became increasingly concerned about Allied Provident's financial health based in

part on its discovery that Allied Provident's parent holding company had filed for bankruptcy

and that there was at least one class action pending against the parent company relating to its

acquisition of Allied Provident, as well as the fact that Companion was unable to procure any

meaningful information concerning Allied Provident's financial condition.  Dkt. No. 36 ¶ 5

(Christakos Decl.).  After unsuccessful efforts to obtain information and discovery from Allied

Provident regarding its financial health, Companion filed an application in the arbitration

proceedings for prehearing security on August 12, 2013.  Dkt. No. 36 ¶ 6-7 (Christakos Decl.).

Approximately one month earlier, Carroll had been diagnosed with a brain tumor and had

scheduled surgery to remove the tumor on September 10, 2013.  Dkt. No. 10 ¶ 4 (Carroll Decl.).

Carroll claims that he informed the other panel members of his condition and upcoming surgery

soon after receiving the diagnosis.  Dkt. No. 10 ¶ 4 (Carroll Decl.).  Companion's counsel,

Nicholas T. Christakos, stated that at the time Companion filed its application for prehearing

security, he had not heard about Carroll's health problems.  Dkt. No. 36 ¶ 7 (Christakos Decl.).

Rather, Companion first learned of Carroll's health problems on August 28, 2013, when Tobin

emailed counsel for the parties to indicate that Carroll was scheduled for surgery on September

10, 2013 and that Tobin did not know whether Carroll would be able to travel to New York for

the scheduled merits hearing in early October.  Dkt. No. 36 ¶ 8 (Christakos Decl.); Dkt. No. 36-3

(Email dated August 28, 2013 from Tobin to Heyliger, Christakos, Ensign).  The same email

suggested the possible need to "discuss alternatives, such as holding the [merits] hearing in Santa

Fe [where Carroll lived], deferring the hearing, etc."  Dkt. No. 36-3.

A transcribed telephone conference that included the arbitrators and counsel for the

parties took place on September 4, 2013.  Dkt. No. 36 ¶ 9 (Christakos Decl.).  Carroll was

expected to participate in the call, but did not.  Dkt. No. 36 ¶ 9 (Christakos Decl.).  On the call,

the other two panel members and counsel discussed scheduling in light of the impending merits

hearing date in early October and a number of deadlines relating to prehearing filings that were

fast approaching.  Dkt. No. 36 ¶ 9 (Christakos Decl.).  Tobin opened the call by noting that

> [t]his is a pre-hearing telephone conference.  One to consider whether or not we
> have any options with respect to the participation of Fred Carroll, the arbitrator
> appointed by Allied Provident . . . which leaves us in a bit of an unknown spot
> with respect to his participation and what options we have with respect to going
> forward with the hearing.

Dkt. No. 36-4 at 4:1-16.  Tobin then noted that he expected to hear from Carroll later that day

regarding whether Carroll would be able to travel and asked counsel for their views on holding

the merits hearing elsewhere.  Dkt. No. 36-4 at 4:21-5:8.  Counsel for Companion indicated the

following:

> We have had some discussions, and I have certainly discussed some of these
> things with my client as well.  We are certainly prepared, at least the Companion
> side is prepared to discuss tentatively rescheduling the hearing.  I think we would
> prefer to keep it in New York for a variety of reasons.  But we certainly
> understand the situation, and we certainly want to be sensitive to what sounds like
> a reasonably serious health issue for Mr. Carroll.  So we want to be as
> accommodating to that as we can.  Our one concern is we were hoping to have the
> matter concluded one way or the other by year's end.

Dkt. No. 36-4 at 5:9-24.  The call also discussed the briefing of the prehearing security issue;

opening briefs had been served prior to the call and the issue was fully briefed shortly thereafter.

   After the September 4, 2013 teleconference, the parties conferred and discussed a

possible date in early December for rescheduling the merits hearing originally scheduled for

October.  Dkt. No. 36 ¶ 12 (Christakos Decl.).  In an email to Christakos and the arbitrators dated

September 18, 2013, Curtis Ensign, Allied Provident's counsel, indicated that Allied Provident

"would be available on December 3, 4, and 5 for an arbitration hearing, [but] would certainly

prefer the hearing to be held after the Christmas holidays."  Dkt. No. 36-6.  "Further," he

indicated, "I am not clear about the current health of Fred Carroll.  He underwent surgery

recently, but immediately thereafter, he suffered a heart attack and had another surgery

performed.  I have not been able to get a status report."  Dkt. No. 36-6.  Christakos replied to

urge the panel to reject scheduling the hearing after the holidays, noting that Companion had

originally agreed to adjourn the October 2-4, 2013 hearing dates "to accommodate the scheduled

surgery and anticipated recuperation time for Mr. Carroll," and that "[i]t is not fair to Companion to delay this proceeding further, merely to accommodate the unexplained desire to conduct the hearing after the holidays." Dkt. No. 36-7 (Email from Christakos to Tobin copying Ensign, Hall, and Carroll dated September 18, 2013). The merits hearing was ultimately tentatively rescheduled for December 3-5, 2013. Dkt. No. 36 ¶ 15 (Christakos Decl.).

Separate from the issue of rescheduling the merits hearing was the issue of Companion's motion for prehearing security, which remained pending but unresolved. Carroll testified that "[i]n preparation for the surgery, I was required to cease taking certain medicines that controlled a heart condition I have, and in [the] recovery room on the day of the surgery, I suffered a heart attack." Dkt. No. 10 ¶ 5 (Carroll Decl.). He further testified that "[a]s I was preparing to go in for brain surgery, Companion filed a motion seeking certain interim relief [ ]. I came to understand later that Allied filed a cross-motion in response. Because of my condition, I was not able to review the submissions of either party." Dkt. No. 10 ¶ 7. He states that "[i]n reviewing my records, I was able to identify only two emails concerning Companion's Interim Relief Motion and/or Allied's cross-motion." Dkt. No. 10 ¶ 8. The first email he identified was from Hall to Tobin copying Carroll and dated September 4, 2013, in which Hall "attached a one page summary of apparent problems that [Hall] had identified in Allied's response to Companion's request for relief." Dkt. No. 10 ¶ 9. Carroll states that "[w]hile the body of the email states, 'Comments on the briefs are attached,' there is no discussion of Companion's arguments in Mr. Hall's summary." Dkt. No. 10 ¶ 9. It is unclear exactly what Carroll intends to convey with this statement, but he did not indicate whether he asked Hall for clarification. The second email Carroll identifies is an email thread between Carroll, Hall, and Tobin. Dkt. No. 10 ¶ 10; Ex. 1. Hall begins the thread with an email on September 19, 2013 to Tobin that copied Carroll:

> I am saddened by Fred's continuing medical problems and offer my best wishes for a full and speedy recovery. Unfortunately we are coming up on some deadlines that make the open questions about his recovery difficult. If we simply postpone everything until after the first of the year, Companion has a hole in its surplus that the motion for collateral and the hearing dates were intended to remedy. This is simply not fair to Companion. In order to maintain the status

quo, I suggest the following: (a) we go forward with the hearing in December with a substitute for Fred if necessary; or (b) we postpone the hearing until after the first of the year but with Allied posting collateral in the amount claimed by Companion.

Dkt. No. 10 at 7. Tobin replies to Hall's email, also copying Carroll, on September 27, 2013

with the following:

> I suppose that, technically, we could act as the majority of the panel. I am reluctant to act until we hear from Fred. However, we have motions ready for decision and we have an obligation to keep this arbitration moving forward. The options I see are either Fred signals that he will be able and willing to participate or he resigns from the panel and AP appoints another arbitrator in which case we would have to allow some time for the substitute to get up to speed. One other thought, the panel deems Fred's failure to respond a constructive resignation. In that case, AP would have to appoint a substitute and we could move on from there. Fred, can you help us out here. We need to know if you are going to continue or resign from the panel.

Dkt. No. 10 at 6-7. Approximately a half hour later, Carroll responds to the thread with the

following: "Tom and Bob, I will get work to catch up this week end." Dkt. No. 10 at 6. Tobin

then replied to Carroll and Hall on October 1, 2013, after the weekend had passed, with the

following:

> Fred, At this point the most pressing issue is Companion's motion for security. Following from that decision we may have to address AP's cross motion. Then we have to address the schedule for the hearing. But first things first. Bob has circulated his thoughts and I must say I have a much more negative reaction to AP's opposition where counsel arbitrarily inserts "[less]" into Article 19 of the reinsurance agreement in an attempt to make the provision look as if it excludes current loss recoverables from the calculation of amounts to be posted as security. And then he goes on to make a misleading calculations [sic] of losses under the program. Maybe you can make better sense of it than we can. Any observations you can add would be welcome.

Dkt. No. 10 at 6.

The next day, October 2, 2013, Allied Provident's counsel, Ensign, emailed Tobin and

copied Carroll, Hall, and Christakos, stating:

> Mr. Carroll has advised me that he is having severe vision problems and he is not able to read or review documents as necessary. Accordingly, I am notifying you that he will not be available for consultation this day and, in all likelihood, for the next several days. On behalf of Allied, I hereby request that no decisions be made until Mr. Carroll is sufficiently recovered to be able to perform his duties in a proper manner.

Dkt. No. 36-8 (Christakos Decl. Ex. 8).  Tobin replied to Ensign, copying Carroll, Hall, and

Christakos, with the following:

> By this reply to your email, I am asking that Companion provide its response to
> your request and the panel will address that request in due course.  I understand
> that Mr. Carroll has had some challenging health issues recently.  *However, he
> has conveyed his position in connection with Claimant's motion for prehearing
> security* so the panel is in a position to issue its ruling on that outstanding motion
> which it will do shortly.

Dkt. No. 36-8 (Christakos Decl. Ex. 8) (emphasis added).  Allied Provident did not address why

Carroll did not respond to this email to indicate that he had not conveyed his position to the other

panelists if, in fact, he had not.  Carroll's declaration does not contest what is contained in this

email, namely that Carroll "conveyed his position in connection with Claimant's motion for

prehearing security."

On November 7, 2013, Ensign emailed the panel to inform them that Carroll's health

issues necessitated an additional delay in the hearing on the merits.  Dkt. No. 36 ¶ 17 (Christakos

Decl.), Dkt. No. 36-9.  Ensign stated that "it is the position of Allied Provident that the

arbitration hearing cannot go forward on December 3.  Allied Provident requests that the hearing

be rescheduled for at least 60 days thereafter."  Dkt. No. 36 ¶ 17 (Christakos Decl.), Dkt. No. 36-

9.  In an email dated November 15, 2013 from Tobin to counsel for the parties and copying

Carroll and Hall, Tobin informed counsel that

> I believe it is also time to consider replacing Fred Carroll on the panel.  While I
> appreciate that he is recovering from some serious health setbacks, one of the
> reasons for choosing arbitration is the ability to resolve the dispute relatively
> quickly.  In my opinion, part of the reason this matter has been stalled is the delay
> in getting a response from Fred.  I would characterize it as a constructive
> resignation.  Assuming counsel can agree on this, there should be sufficient time
> between now and January or February for a replacement arbitrator to get up to
> speed.  Please confer on this issue and let the panel know what you conclude.

Dkt. No. 11 at 22-23 (Ensign Decl. Ex. 3).  Still Carroll did not resign, nor did Allied Provident

attempt to force his resignation.  Christakos then conferred with Ensign regarding Carroll's status

and a possible hearing in early 2014, reaching agreement on both issues.  Dkt. No. 36 ¶20

(Christakos Decl.).  Companion attached drafts of emails that were exchanged between

Christakos and Ensign, Dkt. No. 36-12, and the final draft, Dkt. No. 36-11, that was ultimately sent to the panel on December 4, 2013, which read, in pertinent part:

> We have also discussed Mr. Carroll's status. I understand that Allied Provident would like to retain Mr. Carroll for hearing if he is able to fully recover in time, but Mr. Ensign has also confirmed that Allied Provident is prepared to replace Mr. Carroll in late December or early January if it appears that his recovery is not progressing as expected, so that the hearing can still proceed on February 5. So long as the hearing proceeds on February 5 regardless of how Allied Provident handles the matter, Companion has no objection to this approach.

Dkt. No. 36-11 at 2 (Christakos Decl. Ex. 11 at 2). Allied Provident does not dispute that this email was sent or that Ensign agreed to its contents. *See* Dkt. No. 42 at 17.

The primary basis for Allied Provident's petition to vacate the Interim Award under Section 10(a)(3) is that Hall and Tobin actively prevented Carroll from participating in the Interim Award and that Carroll did not in fact participate in the Interim Award. But the materials supplied by Allied Provident do not bear this out. Instead, even the communications that Carroll attached to his own declaration suggest that the other panelists were trying to involve Carroll in the decisionmaking process, asking for his thoughts and prompting him to respond in a timely fashion. The communications also reveal Hall and Tobin offering various proposals in an effort to be fair to both sides, such as replacing Carroll and giving his replacement time to get up to speed or maintaining the status quo with prehearing security for Companion, which was being prejudiced by ongoing delays. The hearing on the merits was also delayed twice in light of Carroll's health concerns. Tobin also raised the possibility of holding the hearing on the merits in Santa Fe in order to accommodate Carroll. It is unclear what the other panelists could have done under the circumstances. Even assuming that Carroll did not participate in the interim security motion, Allied Provident provides no evidence suggesting that this lack of participation was the fault of Hall and Tobin rather than Carroll. Allied Provident does not address why Carroll failed to resign in time to allow his replacement to get up to speed, or why Allied Provident did not move to replace its own party-appointed arbitrator due to his serious health concerns. Although there is a factual dispute regarding his level of participation, materials

submitted by Allied Provident show that, at the very least, Carroll conveyed his position regarding the security motion. Thus, even without resolving the factual dispute as to whether Carroll fully participated in the Interim Award process, the Court concludes that Allied Provident has not satisfied its heavy burden of showing that the process was fundamentally unfair in light of the fact that the other panelists tried to involve Carroll, offered to replace him and give his replacement time to get up to speed, and tried to accommodate his health needs.

### 2. The Failure to Hold a Hearing Prior to Issuing the Interim Award Was Not Fundamentally Unfair nor an Abuse of the Arbitral Panel's Powers

Allied Provident next argues that it was fundamentally unfair for the panel to issue the Interim Award without a hearing and so the Interim Award should be vacated under 9 U.S.C. § 10(a)(3) and, furthermore, the failure to hold a hearing was an abuse of the arbitral panel's powers and should be vacated under 9 U.S.C. § 10(a)(4).[2]

Beginning with the issue of whether a hearing is required for an arbitral panel's decision to be fundamentally fair under Section 10(a)(3), "[i]t is undisputed that arbitrators must 'give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" *British Ins. Co.*, 93 F. Supp. 2d at 517 (quoting *Tempo Shain*, 120 F.3d at 19)). At the same time, "[t]he lack of oral hearings does not amount to the 'denial of fundamental fairness' required to warrant vacating the award." *Id.* (internal quotation marks omitted) (citing *Griffin Indus. v. Petrojam, Ltd.*, 58 F. Supp. 2d 212, 220 (S.D.N.Y. 1999)). Rather, "[a]s long as an arbitrator's choice to render a decision based solely on documentary evidence is reasonable, and does not render the proceeding 'fundamentally unfair,' the arbitrator is acting within the liberal sphere of permissible discretion." *Id.*; *accord Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 209 (S.D.N.Y. 2002) ("It does not violate due process to issue a decision based on a written submission."); *Cragwood Managers*, 132 F. Supp. 2d at 289 (same). The key

---

[2] Allied Provident also argues that the arbitral panel issued the Interim Award in excess of their powers by excluding Carroll from the Interim Award process. Dkt. No. 9 at 20-22. As noted in part II.C.1, the Court concludes Allied Provident did not satisfy its burden on this ground under Section 10(a)(3), thus it need not consider that argument again under Section 10(a)(4).

issue is whether the arbitral panel "allow[ed] each party an 'adequate opportunity to present its evidence and argument.'" *Yonir Techs., Inc.*, 244 F. Supp. 2d at 209 (quoting *Tempo Shain*, 120 F.3d at 20).

Allied Provident does not dispute that it was accorded an adequate opportunity to present its evidence and argument.  Indeed, the parties supplied full briefing on the issue of prehearing security before the panel issued its Interim Award.  Moreover, Allied Provident never requested a hearing.  Having never requested a hearing, Allied Provident cannot now be heard to complain that failure to have one was fundamentally unfair.

Next, Allied Provident argues that the failure to hold a hearing, even if not fundamentally unfair, was required by the terms of the parties' arbitration agreement and that failure to hold the hearing before issuing the Interim Award was an act in excess of the arbitral panel's powers that should be vacated under Section 10(a)(4).  "The authority of the arbitral panel is established only through the contract between the parties who have subjected themselves to arbitration, and a panel may not exceed the power granted to it by the parties in the contract." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 140 (2d Cir. 2007) (citing § 10(a)(4); *Banco de Seguros del Estado*, 344 F.3d at 262)).

Allied Provident's argument here turns on the following provision of the parties' Reinsurance Agreement:  "The Arbitrators . . . shall issue their decision in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross examination and rebuttal shall be allowed." Dkt. No. 1 at 24.  Companion responds that the panel possessed the authority under the parties' agreement to issue the Interim Award without a hearing for the same reason that such an award without a hearing was fundamentally fair—Allied Provident never asked for one.  Even assuming that this provision should be interpreted to require a hearing on all motions—and other interpretations are certainly available—that does not resolve the matter.  If sophisticated parties, for whatever reason, choose to forgo a procedural protection afforded to them in their own arbitration agreement, they cannot later complain to a court of law that the arbitral panel exceeded its powers by acquiescing to the

parties' wishes. This conclusion is supported by the general principle that "arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn*, 103 F.3d at 12. Sophisticated parties may well decide to avoid certain procedural protections included in their arbitration agreement in order to encourage the efficient settlement of their disputes and avoid long and expensive litigation; or they may make a similar decision for strategic reasons. The Court would be facing a different scenario had Allied Provident requested and been denied a hearing, but that is not what happened.

Therefore, the Court concludes that failure to hold a hearing in advance of the Interim Award was neither fundamentally unfair under Section 10(a)(3) nor an act in excess of the arbitrator's powers under Section 10(a)(4).

### 3.      The Arbitrators Did Not Demonstrate Evident Partiality

Finally, Allied Provident moves to vacate the Interim Award on the grounds that the arbitrators exhibited evident partiality under Section 10(a)(2) of the FAA. The standard for showing evident partiality is, like most standards in judicial review of arbitrations, quite high, and Allied Provident comes nowhere close to satisfying it.

"Evident partiality may be found only 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Scandinavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 64 (2d Cir. 2012) (quoting *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007)); *see also Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefits Funds*, 748 F.2d 79, 84 (2d Cir. 1984). Moreover, "a showing of evident partiality may not be based simply on speculation," *id.* at 72 (internal quotation marks omitted) (citing *United States v. Int'l Bhd. Of Teamsters*, 170 F.3d 136, 147 (2d Cir. 1999)); rather, the party claiming evident partiality bears the burden of showing bias by clear and convincing evidence, *Kolel Beth*, 729 F.3d at 106 (citing *Flexible Mfg. Sys. PTY. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996)). And to determine "whether that burden has been satisfied, the court 'employ[s] a case-

by-case approach in preference to dogmatic rigidity.'" *Scandinavian Reinsurance Co.*, 668 F.3d at 72 (quoting *Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004)).

Allied Provident points to various actions detailed above with respect to the conduct of the arbitration proceedings as support for its claim of bias, but focuses primarily on the email from Hall to Tobin on which Carroll was copied dated September 19, 2013. Dkt. No. 9 at 25. In that email Hall states:

> I am saddened by Fred's continuing medical problems and offer my best wishes for a full and speedy recovery. Unfortunately we are coming up on some deadlines that make the open questions about his recovery difficult. If we simply postpone everything until after the first of the year, Companion has a hole in its surplus that the motion for collateral and the hearing dates were intended to remedy. This is simply not fair to Companion. In order to maintain the status quo, I suggest the following: (a) we go forward with the hearing in December with a substitute for Fred if necessary; or (b) we postpone the hearing until after the first of the year but with Allied posting collateral in the amount claimed by Companion.

Dkt. No. 10 at 7 (Carroll Decl. Ex. 1). Allied Provident emphasizes Hall's reference in the third sentence to the "hole in [Companion's] surplus" as "indicat[ing] that Mr. Hall was privy to extraneous information concerning Companion's financial condition and was advocating that the panel grant Companion's request for relief to remedy it." Dkt. No. 9 at 11.

The Court need not spend much time on this issue because it is pure speculation and does not rise to the level of evidence required to show that a reasonable person would *have* to conclude that Hall was partial. *Kolel Beth*, 729 F.3d at 106. Moreover, in the context of the entire email chain, Hall merely notes that Companion would be prejudiced by further delay and proposes solutions consistent with the original scheduling that all parties agreed to and consistent with arbitration's goal of efficient resolution of disputes—either replace Carroll and allow some time for his replacement to get up to speed or postpone the hearing but require Allied Provident to post collateral.

Allied Provident also contends that "the evidence suggests that, in fact Messrs. Tobin and Hall wanted to avoid Mr. Carroll's participation in the decision," Dkt. No. 9 at 26, thus demonstrating bias. As discussed above, there is no support for this argument. For example, the

emails show Tobin and Hall repeatedly asking for Carroll to respond. *See, e.g.,* Dkt. No. 10 Ex. 2 at 6-7 (Carroll Decl.) ("I am reluctant to act until we hear from Fred."; "Fred, can you help us out here. We need to know if you are going to continue or resign from the panel."; "Any observations you can add would be welcome."). Both Hall and Tobin attempted to deal with Carroll's illness and delinquent responses. They proposed alternatives that would fairly recognize the interests of both parties, including allowing Allied Provident to appoint a new arbitrator and affording the new arbitrator time to get up to speed.

Allied Provident also states that both Tobin and Hall "*did not even respond* to a request by Mr. Carroll that the hearing on the merits be held in the Santa Fe/Albuquerque area or Phoenix area, knowing full well that unless they agreed to this request, Mr. Carroll would be prevented from participating." Dkt. No. 9 at 26 (citing Carroll Decl. ¶¶ 13, 15) (emphasis in original). This is inaccurate. First, the hearing on the merits was *twice* delayed to accommodate Carroll's health issues. Second, on the call that Carroll was expected to but did not join, Tobin raised the issue of Carroll's travel difficulties, noting "[w]e had a discussion among the panel last week about options, one of which was to have the hearing in Santa Fe, I guess is where Fred lives so, that he wouldn't have to travel." Dkt. No. 36-4 at 4:25-5:4 (Christakos Decl. Ex. 4). Companion objected, and it was ultimately agreed to hold the hearing in New York as originally planned.

Therefore, because Allied Provident has not satisfied its burden of showing that the proceedings leading to the Interim Award were fundamentally unfair, that the arbitrators exceeded their powers, or that any of the arbitrators demonstrated evident partiality, its cross-motion to vacate the Interim Award is DENIED.

### D. The Interim Award Should Not Be Stayed

Allied Provident requested that if the Court did not dismiss Companion's petition based on its lack of finality or vacate the Interim Award based on the conduct of the proceedings that the Court should stay enforcement of the Interim Award until the question of the panel's constitution is resolved. The Court sees no reason to stay an otherwise duly enforceable order of

the arbitral panel. Moreover, aside from the arguments discussed herein, Allied Provident offers no reasoning or legal authority to support a stay of an award that it should have complied with no later than October 24, 2013. The request to stay the Interim Award is therefore DENIED.

### III. ALLIED PROVIDENT'S MOTION TO DISQUALIFY THE EXISTING ARBITRAL PANEL AND APPOINT A NEW PANEL OR STAY THE ARBITRATION PROCEEDINGS, AND COMPANION'S CROSS-PETITION TO COMPEL DEFENDANT TO SELECT A NEW PARTY ARBITRATOR

Allied Provident also filed a cross-petition in this Court seeking an order declaring that the presently constituted panel is disqualified and ordering the parties to select a new panel. In the alternative, Allied Provident requested an order staying the arbitration until the proceedings, including the Interim Award, can be reconsidered by a full arbitral panel, consisting of three, not two, panelists in light of the fact that Carroll resigned. In opposition, Companion moved to compel Allied Provident to appoint a new party arbitrator.

In moving to disqualify the existing arbitral panel, Allied Provident encourages the Court to extend the rule articulated in *Marine Products Export Corp. v. M.T. Globe Galaxy*, 977 F.2d 66 (2d Cir. 1992)—that a new panel should be convened if a vacancy arises due to the death an arbitrator prior to issuing a final award—to cover the situation here where the arbitrator resigned due to poor health. But the Second Circuit's "case law has tended to restrict, rather than to extend, the reach of the rule articulated in *Marine Products*." *Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122, 128 (2d Cir. 2010). And, moreover, the Second Circuit has expressly held that the *Marine Products* rule "does not apply to a vacancy occasioned by a resignation," regardless of the reason for the resignation. *Id.* at 123-24. Thus, in light of the Second Circuit's explicit holding that the *Marine Products* rule does not extend beyond the death of an arbitrator, this Court declines Allied Provident's invitation to extend the rule to cover the resignation of an arbitrator occasioned by severe illness. Therefore, Allied Provident's motion to disqualify the existing arbitral panel is DENIED.

The appropriate course of action now is for Allied Provident to appoint a party arbitrator. *Cf. Ins. Co. of N. Am.*, 609 F.3d at 132 ("INA does not seriously dispute that, absent the application of the *Marine Products* rule, the district court was justified in reappointing Sullivan or, in the alternative, directing INA to appoint a replacement."); 9 U.S.C. § 5. Therefore, the Court hereby orders Allied Provident to appoint a new arbitrator within three weeks of the date of this Order. Recognizing that Allied Provident is entitled to have its party-appointed arbitrator participate in any future proceedings, the Court will stay the arbitration proceedings for three weeks to allow Allied Provident the opportunity to appoint a new arbitrator.

## IV.   ALLIED PROVIDENT'S MOTION TO STRIKE PORTIONS OF THE DECLARATION OF ROBERT M. HALL

Allied Provident also moved to strike portions of the Hall Declaration, which was offered primarily to counter Carroll's declaration. Allied Provident's objections appear meritless, but the Court need not address them because the Court concluded that Allied Provident did not carry its burden regarding fundamental fairness. Thus, the Court did not need to rely on Hall's declaration. Therefore, Allied Provident's motion to strike the Hall Declaration is DENIED as moot.

## V.   CONCLUSION

Based on the foregoing,

(1) Companion's motion to confirm the Interim Award is GRANTED;

(2) Allied Provident's cross-motion to vacate or stay the Interim Award is DENIED;

(3) Allied Provident's motion to disqualify the existing arbitral panel and appoint a new panel is DENIED;

(4) Allied Provident's motion to stay the arbitration proceedings is GRANTED for three weeks to afford Allied Provident time to appoint a new arbitrator;

(5) Companion's cross-petition to compel Allied Provident to select a new party

arbitrator is GRANTED and Allied Provident must select a new party arbitrator no later

than three weeks from the date of this Order; and

(6) Allied Provident's motion to strike portions of the Declaration of Robert M. Hall is

DENIED.

This resolves Dkt. Nos. 1, 9, 16, 30, and 38.  The Clerk of Court is directed to close the case.


SO ORDERED.

Dated: September 26, 2014
      New York, New York

_____
ALISON J. NATHAN
United States District Judge